IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

IN RE:                                                Case No. 21-09428

Piotr M. Gawron,                                      Chapter 11

                Debtor(s).              Judge David D. Cleary

 

                                             Motion Date:   Thursday, February 24, 2022

                                               Motion Time:  10:00 a.m.

<u>NOTICE OF MOTION</u>

      NOTICE IS HEREBY GIVEN that on Thursday, February 24, 2022, at 10:00 a.m., I will appear before the Honorable David D. Cleary or any judge sitting in his stead in Room 644 or in the courtroom usually occupied by him at the United States Courthouse, 219 South Dearborn, Chicago, Illinois 60604, and then and there present the Motion of LincolnWay Community Bank to Dismiss and Bar Debtor from Refiling or Alternatively, for Relief from the Automatic Stay.

      **This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

      **To appear by video**, use this link: [https://www.zoomgov.com/join](https://www.zoomgov.com/join). Then enter the meeting ID and passcode.

      **To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

      **Meeting ID and passcode**. The meeting ID for this hearing is 161 122 6457 and the passcode is Cleary644. The meeting ID and passcode can also be found on Judge Clear's webpage on the court's website, [https://www.ilnb.uscourts.gov/content/judge-david-d-cleary](https://www.ilnb.uscourts.gov/content/judge-david-d-cleary).

      **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

## CERTIFICATE OF SERVICE

I, Sandra L. Makowka, an attorney, certify that I served a copy of this Notice and the Motion referred to herein, together with the Exhibits attached thereto, were served upon on each party named below at the address shown and by the method indicated on February 18, 2022.

VIA ELECTRONIC NOTICE THROUGH ECF:

David R. Herzog, attorney for Debtor Piotr M. Gawron

Patrick S. Layng, U.S. Trustee

Spencer Ezell, U.S. Trustee

Dana N O'Brien, attorney for Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not in its individual capacity but solely as Certificate Trustee for NRP Mortgage Trust I

Ally Financial, c/o AIS Portfolio Services, LP

David Freydin, attorney for KJ Plumbing Services, Inc.

Jeffrey K. Paulsen, attorney for US Enterprises LLC F4

VIA FEDERAL EXPRESS:

Piotr M. Gawron, 199 N. Rainbow Rd., North Barrington, IL 60010

LincolnWay Community Bank,

By: /s/ Sandra L. Makowka
   One of Its Attorneys

Cohen Dovitz Makowka, LLC
Sandra L. Makowka
Attorney No. 6286780
10729 W. 159TH Street
Orland Park, IL 60467
(708) 460-7711
Email: BANKRUPTCY@CDM.LEGAL

| | |
|---|---|
| IN RE: | Case No. 21-09428 |
| Piotr M. Gawron, | Chapter 11 |
| Debtor(s). | Judge David D. Cleary |
| | |
| | Motion Date:  Thursday, February 24, 2022 |
| | Motion Time: 10:00 a.m. |

### MOTION OF LINCOLNWAY COMMUNITY BANK TO DISMISS AND BAR DEBTOR FROM REFILING OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY

LincolnWay Community Bank ("LincolnWay"), by and through its undersigned counsel, hereby moves this Court to (i) dismiss this case for "cause" pursuant to 11 U.S.C. § 1112(b) and bar the above-captioned Debtor from filing a subsequent case for a minimum of 365 days, or alternatively, for entry of an order for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(3), and in support thereof, states as follows:

## BACKGROUND

1. On August 9, 2021 (the "Petition Date"), Piotr M. Gawron (the "Debtor") filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. LincolnWay is a secured creditor and pursuant to 11 U.S.C. §1109.

## RELEVANT FACTS

### THE LINCOLNWAY FORECLOSURE

3. LincolnWay is a banking institution chartered in the State of Illinois, is the holder of a Note and Construction Loan Agreement dated November 17, 2017 in the amount of $1,050,000.00 executed by the Debtor (collectively, the "Note"). The Note is secured by a Construction Mortgage and Assignment of Rents dated November 17, 2017 against the Debtor's primary residence, 199 Rainbow Road, North Barrington, IL (the "Rainbow Road Property").

4. The terms of the Note, Construction Loan Agreement, Mortgage and Assignment of Rents were modified by a Change in Terms Agreement dated November 17, 2018, pursuant to which the maturity of the term of the loan was extended to August 17, 2019. Copies of the

loan documents for the LincolnWay loan are attached hereto and incorporated herein collectively as Exhibit "A".

5.  Beginning with the April 17, 2019 payment, the Debtor failed to pay the real estate taxes due and owing for the Rainbow Road Property and failed to make the monthly payments due under the Note; as a result, on July 25, 2019, LincolnWay instituted an action to foreclose its Mortgage against the Rainbow Road Property, which case was pending the 19th Judicial Circuit Court, Lake County, Illinois as Case No. 19CH864 (the "Foreclosure Case").

6.  On May 21, 2021, a judgment of foreclosure was entered in the Foreclosure Case, which established the amount due to LincolnWay to be $1,361,383.35 (the "Judgment of Foreclosure"). A copy of the Judgment of Foreclosure is attached hereto and incorporated herein as Exhibit "B".

7.  The Judgment of Foreclosure provides that all "costs, attorney's fees, and other fees, expenses and disbursements" that LincolnWay will become obligated to pay for preservation of the Rainbow Road Property are "made a lien upon the [Rainbow Road Property]." *See* Exhibit B. Page 5, Section IV.

8.  The Judgment of Foreclosure provides for the amount of the Judgment, and all additional advances, to accrue interest pursuant to 735 ILCS 5/2-1303, accrues interest at the rate of 9% *per annum,* which calculated only on the balance due to LincolnWay as stated in the Judgment of Foreclosure, accrues at a rate of $335.68 per day and $10,070.40 per month. *See* Exhibit B. Page 5, Section IV.

9.  Pursuant to the Judgment of Foreclosure, a Sheriff's Sale of the Debtor's Residence was scheduled to occur on August 10, 2021 (the "Sheriff's Sale").

10. On August 3, 2021, the Debtor filed a Motion to stay the Sheriff's Sale, the basis of which was a contract for the sale of the Debtor's Residence with a purchase price of $1,375,000.  A copy of the Motion to Stay Sale and sale contract are attached hereto and incorporated herein collectively as Exhibit "C".

11. On August 9, 2021, the Judge presiding over the Foreclosure Case denied the Debtor's Motion to Stay the Sheriff's Sale.

## THE BANKRUPTCY FILING

12. Approximately 11 hours after failing to obtain a stay of the Sheriff's Sale in the Foreclosure Case and a little over 13 hours before the Sheriff's Sale was scheduled to occur, at 8:20 p.m. on August 9, 2021, the Debtor filed a petition for relief in the instant case.

13. To date, the Office of the United States Trustee for the Northern District of Illinois (the "U.S. Trustee") has not appointed an official committee of creditors in this Case, nor has any trustee or examiner been appointed; as a result, the Debtor is a debtor in possession pursuant to sections 1101 and 1107 of the Bankruptcy Code and continues to manage the property of the estate.

14. On September 17, 2021, the U.S. Trustee conducted the Debtor's meeting of creditors (the "341 Meeting"), which was attended by counsel for LincolnWay and John Lockie, Vice President of LincolnWay.

15. At the Debtor's 341 Meeting, the Debtor's testimony was inconsistent with information known to LincolnWay and information available in the public record about the Debtor's interest in various business entities and other assets of the Debtor that were not disclosed in the Debtor's Schedules.

16. As a result of the inconsistent statements made by the Debtor at the 341 Meeting, LincolnWay sought and was granted leave by this Court to issue subpoenas to third-party respondents believed to be in possession of documents related to the assets and liabilities of the Debtor.

17. As demonstrated herein, the documents provided to LincolnWay in response to the subpoenas revealed that the Debtor has not acted in good faith in the filing of this case, both pre-petition and post-petition and it is based on the Debtor's actions that LincolnWay now moves for dismissal of this case, conversion of this case to a Chapter 7 and modification of the automatic stay.

### REQUEST FOR DISMISSAL

18. 11 U.S.C. § 1112(b) provides, in pertinent part, "on request of a party interest . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case, whichever is in the best interest of creditors and the estate, for cause." 11 U.S.C. § 1112(b). Section 1112(b)(4) includes a non-exhaustive list of factors for courts to consider in determining whether cause exists but ultimately, what constitutes "cause" is a matter of judicial discretion. *In re Jartran, Inc.*, 71 B.R. 938, 943 (Bankr. N.D. Ill. 1987), *aff'd*, 886 F.2d 859 (7th Cir. 1989).

19. The following § 1112(b)(4) factors evidencing cause for dismissal are present in this Case: (A) the Debtor's schedules failure to accurate reflect all of the Debtor's assets and liabilities, the Debtor failed to file Operating Reports for the last four months and the Debtor

has failed to even propose a plan within the six months this Case has been pending; (B) the Debtor lacks any reasonable likelihood of rehabilitation due to the Debtor's lack of income; (C) the Debtor's failure to maintain appropriate insurance against the sole asset disclosed by the Debtor, the Rainbow Road Property.

20. The § 1112(b)(4) factors evidencing cause that are present in this case include:

> (A) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public
>
> (E) failure to comply with an order of the court;
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.

11 U.S.C. § 1112(b)(4).

21. The list of examples in § 1112(b)(4) is "viewed as illustrative," and courts "should consider other factors as they arise." *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011).

22. In addition to the factors articulated in § 1112(b)(4), case law has espoused an additional ground for consideration – filing a case in "bad faith." *In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986). Of those considered, those evidencing bad faith that are present in this Case include:

> (A) Improper pre-petition conduct by the debtor;
>
> (B) The sole or major aswset of the debtor is the subject of a foreclosure;
>
> (C) The petition was filed on the eve of the foreclosure;
>
> (D) The purpose in filing the case was solely to create the automatic stay; and
>
> (E) The filing of the petition allows the debtor to evade a court order.

23. The actions of the Debtor in filing the Petition the existence of cause, demonstrating dismissal, or in the alternative, conversion, not only to be appropriate but necessary.

**I. THE DOCUMENTS FILED BY THE DEBTOR IN THIS CASE GROSSLY MISREPRESENT THE DEBTOR'S ASSETS AND LIABILITIES.**

24. The very integrity of the bankruptcy court and the successful administration of the bankruptcy system rest upon compliance with the debtor's obligation of disclosure." Schechter v. Hansen (In re Hansen), 325 B.R. 746, 757 (Bankr. N.D. Ill. 2005)

citing Urological Group, Ltd. v. Petersen (In re Petersen), 296 B.R. 766, 790 (Bankr. C.D. Ill. 2003).

25. Thus, the Bankruptcy code requires, "[a]ll assets and ownership interests must be disclosed, and all questions in the schedules and statement of financial affairs must be answered completely and honestly." Hansen, 325 B.R. at 757.

26. A debtor's duty to ensure the accuracy and completeness of his schedules is one which continues throughout the bankruptcy case. *Searles v. Riley* (*In re Searles*), 317 B.R. 368, 377-78 (9th Cir. BAP 2004), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006). Thus, errors in previously filed schedules must be corrected. *See U.S. Trustee v. Bresset* (In re Engel), 246 B.R. 784, 794 (Bankr. M.D. Pa. 2000) (citing *Torgenrud v. Benson* (*In re Wolcott*), 194 B.R. 477, 486 (Bankr. D. Mont. 1996)).

27. A debtor's lack of candor or completeness in filing schedules is certainly an indication of bad faith." *In re Jakovljevic-Ostojic*, 517 B.R. 119, 127 (Bankr. N.D. Ill. 2014).

28. The first factor demonstrating the Debtor's bad faith in filing his Petition and cause for dismissal is evidenced by the following material misstatements and omissions made the by Debtor in the Petition and other documents filed in this Case, which the Debtor filed under penalties of perjury:

**A. UNDISCLOSED ASSETS**

29. Property of the estate is "broad[ly]" defined by the Bankruptcy Code, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983), encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Indeed, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Paloian v. Dordevic (In re Dordevic)*, 633 B.R. 553 (Bankr. N.D. Ill. 2021) citing *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

30. The failure to disclose assets potentially, and inexcusably denies creditors a fair distribution and fair treatment in a case. *In re Jongsma*, 402 B.R. 858, 875 (Bankr. N.D. Ind. 2009).

31. In the Statement of Financial Affairs filed by the Debtor, the Debtor stated that he possessed no interest in an LLC, partnership or joint venture. *See* Doc. 18, Part 4, #19. However, the documents that were already in the possession of LincolnWay prior to the Petition Date and those obtained in response to the subpoenas issued in this Case evidence the Debtor's interest in the following entities:

**PMG Builders 3, LLC ("PMG 3")**

32. The Operating Agreement of PMG 3 dated July 18, 2020 and subsequently executed documents signed by the Debtor reflect that the Debtor has 100% ownership of the membership in PMG Builders 3, LLC ("PMG 3"). Exhibit A to the Operating Agreement reflects the Debtor to have made an Initial Capital Contribution to PMG 3 in the form of a cash payment in the amount of $10,000. A copy of the Operating Agreement of PMG 3 is attached hereto as Exhibit "D".

33. PMG 3 is the owner of the following parcels of real property:

    i. **20083 Ela Road, Deer Park, Illinois (the "Ela Road Property"):** Acquired by PMG 3 on or about July 26, 2020 by virtue of deed reciting consideration in the amount of $114,000. Although title to the Ela Road Property was acquired in the name of PMG 3, the purchase contract appears to have been entered into by the Debtor, on behalf of 3rd Coast Builders and Construction LLC ("3rd Coast"). A copy of the entire purchase contract for the Ela Road property was not produced by Kawa in response to the subpoena issued to it. However, the Vacant Land Disclosure that was a part of and incorporated into the purchase contract between the seller and 3rd Coast, dated May 31, 2020. On May 31, 2020, the Debtor executed a resolution, as the sole member of PMG 3, authorizing Daniel Distefano, as manager of PMG 3, to execute all instruments necessary to effectuate the closing and to obtain the mortgage loan from Kawa to complete the purchase of the Ela Road Property. In conjunction with the purchase of the Ela Road Property, PMG 3 obtained a loan from Kawa in the amount of $115,513.92 which loan was secured by a mortgage against the Ela Road Property and personally guaranteed by the Debtor. Copies of the Deed, Vacant Land Disclosure, Resolution, Note, Mortgage, Real Property Loan Agreement and Guaranty Agreement are attached hereto and incorporated herein collectively as Exhibit "E".

    ii. **1140 Erica Drive, Wauconda, Illinois 60084 (the "Erica Drive Property"):** Acquired by PMG 3 on or about March 17, 2021 by virtue of deed reciting consideration in the amount of $42,000. Although title to the Erica Drive Property was acquired in the name of PMG 3, the contract was signed by the Debtor, on behalf of PMG Buiders [sic] & Construction. On February 25, 2021, the Debtor executed a resolution, as the sole member of PMG 3, authorizing Daniel Distefano, as manager of PMG 3, to execute all instruments necessary to effectuate the

closing and to obtain the mortgage loan from Kawa to complete the purchase of the Erica Drive Property. In conjunction with the purchase of the Erica Drive Property, PMG 3 obtained a loan from Kawa in the amount of $40,000.00 which loan was secured by a mortgage against the Erica Drive Property and personally guaranteed by the Debtor. The remaining portion of the purchase price, $4,544.01, was paid by a check signed by the Debtor drawn on an account at PNC Bank in the name of PMG Contractors & Builders Inc. Copies of the Deed, Purchase Contract, Resolution, Note, Mortgage, Real Property Loan Agreement and check for the remaining purchase price are attached hereto and incorporated herein collectively as Exhibit "F".

iii. **214 Krause Lane, Wheeling, IL 60090 (the "Krause Lane Property"):** Acquired on or about March 1, 2021 by virtue of a quit claim deed executed by the Debtor, as President of 3rd Coast, which deed recited no consideration for the transfer. In the deed conveying ownership of the Krause Lane Property, dated December 7, 2017, the stated consideration was $195,000. On June 25, 2021, the Debtor executed a resolution, as the sole member of PMG 3, ratifying acceptance by PMG 3 of the Quit Claim Deed conveying ownership to it of the Krause Lane Property. However, the June 25, 2021 resolution mistakenly authorizing Daniel Distefano, as manager of PMG 3, to execute all instruments necessary to obtain a mortgage loan from Kawa to complete the purchase of the Krause Lane Property. On or about June 25, 2021, PMG 3 obtained a loan from Kawa in the amount of $150,000, which loan was secured by a mortgage against the Krause Lane Property and personally guaranteed by the Debtor. Of the total loan amount, only $100,000 was disbursed as of June 25, 2021, which was disbursed for payment of closing costs, unpaid real estate taxes for the Krause Lane Property and municipal fines. The remaining proceeds were paid to PMG 3, which received a check in the amount of $39,666.35 on June 28, 2021 and a check in the amount of $9,774.86 on August 6, 2021. Copies of the Deed to PMG 3, Deed to 3rd Coast, Resolution, Note, Mortgage, Real Property Loan Agreement, Guaranty and Disbursement Ledger of First American and checks issued to PMG 3 are attached hereto and incorporated herein collectively as Exhibit "G".

34. Since PMG 3 acquired ownership of the Ela Road, Erica Drive and Krause Lane properties, there has been no recorded transfer of ownership and therefore, PMG 3 remains the owner of record of each property.

35. In a loan application submitted to Wise Lending in June 2014, the Debtor declared his ownership interest in PMG 3. A copy of the Wise Lending application is attached hereto and incorporated herein as Exhibit "H".

## 3RD COAST BUILDERS & CONSTRUCTION, INC. ("3RD COAST")

36. At the 341 Meeting, the Debtor testified that his mother was the sole shareholder of that entity and he was not an officer, director or shareholder of 3rd Coast and the Debtor's SOFA stated that he had no ownership interest in any business and did not hold any position as an officer of any business. *See* Doc. 18.

37. The testimony given by the Debtor at the 341 Meeting and the Debtor's SOFA are directly contradicted by the 2020 annual report, filed on February 27, 2021, which reflects the Debtor is the President, Secretary and Director of 3rd Coast. A copy of the Annual Report filing is attached hereto and incorporated herein as Exhibit "I".

38. Based on the claim that was filed by the Internal Revenue Service (Claim 11), the Debtor last filed his personal taxes in 2017. A copy of the Debtor's 2017 tax return was provided by Lending Mortgage in its subpoena response. A copy of the Debtor's 2017 1040 Tax Return is attached hereto and incorporated herein as Exhibit "J".

39. Included in the Debtor's personal tax return was the tax return for 3rd Coast and K-1 issued to the Debtor, which reflected the Debtor to have 100% of the ownership interest in 3rd Coast Builders, from which the Debtor received distributions for the year 2017 in the amount of $20,270. A copy of the corporate return for 3rd Coast is attached hereto and incorporated herein as Exhibit "K".

40. The 2017 tax return of 3rd Coast reflected gross receipts or sales of $1,243,816 and net income of $26,462, which income the Debtor declared on Schedule E of his personal tax return. *See* Exhibit J, Page 1; Exhibit I, Page 10.

41. The Debtor's continued ownership of 3rd Coast was reaffirmed in application of loans he solicited from Lending Mortgage in December 2018, a copy of which application is attached hereto and incorporated herein as Exhibit "L".

42. Additionally, in a January 8, 2019 letter from Christopher Bator, CPA, Mr. Bator stated, "This office has been assisting Mr. Piotr Gawron in accounting and tax preparation

since 2013. Mr. Gawron is a 100% shareholder of both corporations: PMG Builders & Construction Inc. and 3rd Coast Builders & Construction Inc." A copy of the January 8, 2019 letter is attached hereto and incorporated herein as Exhibit "M".

43. On June 14, 2021, less than two months prior to his bankruptcy filing, in support of the Debtor's loan application, Ladonna Logan at Wise Lending submitted a copy of the 2017 K-1 Statement issued to the Debtor by 3rd Coast as proof that the Debtor maintained 100% ownership of 3rd Coast. A copy of the June 14, 2021 email is attached hereto and incorporated herein as Exhibit "N".

44. Since approximately June 2016, 3rd Coast is the owner of real estate commonly known as 4838 N. Prospect Avenue, Norridge, IL 60706 (the "Prospect Avenue Property"), which is encumbered by the following mortgages:

    A. A mortgage, assignment of rents, fixture filing and security agreement dated August 13, 2019, to Constructive Loans, LLC in the amount of $412,000 for which indebtedness the Debtor is the guarantor, and for which a proof of claim has been filed evidencing a balance due in the amount of $380,386.04 (Claim 13).

    B. A loan to 3rd Coast and the Debtor November 22, 2019 made by US Enterprises LLC F4 in the amount of $160,854, which was executed by the Debtor, individually and in his capacity as Director, President and Secretary of 3rd Coast (the "US Enterprises Mortgage"). Pursuant to the payoff letter issued by US Enterprises in response to the subpoena, there remains a balance due and owing on the loan, as of the January 2, 2021, in the amount of $167,967.06 with a per diem accrual of interest of $80.43.

Copies of the Prospect Avenue Property Deed, Constructive Loan Mortgage, US Enterprises Mortgage and US Enterprises payoff letter are attached hereto and incorporated herein collectively as Exhibit "O".

45. The Debtor also served as the guarantor of several debts of 3rd Coast for which proofs of claim have been filed in this case. Specifically, the Debtor serves as the Guarantor of the following debts of 3rd Coast to (i) On Deck for a business loan in the amount of $85,000.00 (Claim 4), which has a remaining balance of $2,637.18 and (ii) Capital One credit card (Claim 5) which has a balance due $12,367.66.

**PMG BUILDERS & CONTRACTORS/PMG BUILDERS & CONSTRUCTION, INC. ("PMG")**

46. On or about March 25, 2011, a corporate entity was registered with the Secretary of State of Illinois named PMG Builders & Contractors, Inc.

47. The 2017 tax return filed by PMG Builders & Contractors, Inc., included a K-1 issued to the Debtor, which reflected the Debtor to have a 100% ownership interest in the entity. A copy of the 2017 tax return of PMG Builders & Contractors, Inc. is attached hereto and incorporated herein as Exhibit "P".

48. The 2017 tax return of PMG Builders & Contractors, Inc. reflected gross receipts or sales of $1,541,826 and net income of $42,940 which matched the ordinary business income attributed to the Debtor on the K-1 and set forth in Schedule E of the Debtor's 2017 tax return. *See* Exhibit P, Pages 1, 7; Exhibit J, Page 10.

49. PMG Builders & Contractors, Inc. was involuntarily dissolved on August 10, 2018. A copy of the print out from the Secretary of State's website evidencing the date of dissolution is attached hereto and incorporated herein as Exhibit "Q".

50. On June 27, 2018, Articles of Incorporation were filed with the Secretary of State of Illinois forming a new entity called PMG Builders & Construction Inc. which stated the name of the registered agent to be "Stanislaw Swiatek" with the address of the Rainbow Road Property, the Debtor's primary residence. On October 18, 2018, Articles of Amendment were filed for PMG Builders & Construction, Inc. which modified the officers and directors to reflect "Stanislaw Swiatek" with the address of the Rainbow Road Property to be the party acting as Director, President, Secretary and Treasurer. Copies of the Articles of Incorporation and Articles of Amendment are attached hereto and incorporated herein collectively as Exhibit "R".

51. On November 8, 2019, PMG Builders & Construction, Inc. was voluntarily dissolved for its failure to file an annual report and pay a franchise tax. A little less than 6 months before the filing of his Petition, on February 27, 2021, an Application for reinstatement of PMG Builders & Construction, Inc. was filed with the Secretary of State, and was signed by the Debtor, as President. On February 27, 2021, the 2019 and 2020 annual reports were filed by the Debtor on behalf of PMG Builders & Construction, Inc., which listed Stanislaw Swiatek as the registered agent, with the Rainbow Road address and which listed the Debtor to be the President, Secretary and Director. Copies of the Application for Reinstatement and 2019 and 2020 annual reports are attached hereto and incorporated herein collectively as Exhibit "S".

**OTHER ASSETS**

52. The Rainbow Road Property, which is the Debtor's primary residence, is approximately 4,500 square feet and valued somewhere between $1.2 million and $1.85 million. Yet, the Debtor's Schedule C states the total value of all of the household furnishings to be $1,500.00.

**B. UNDISCLOSED LIABILITIES**

53. In the Schedule of the 20 Largest Unsecured Creditors filed by the Debtor on August 9, 2021, the Debtor listed only five (5) unsecured creditors with claims totaling $44,800.00. *See* Doc 1-2.

54. On September 8, 2021, the Debtor filed Schedule E/F, which provided for six (6) unsecured creditors with claim totaling $48,839.92. *See* Doc. 18.

55. To date, there have been unsecured claims filed in this Case by ten different creditors totaling $295,458.96.

56. Of the total unsecured claims filed, $274,012.06, or 92.7% of the total unsecured claims filed is attributable to claims and creditors not listed on the Debtor's Statement of the 20 Largest Unsecured Creditors or Schedule E/F. Specifically, those creditors/claims filed for undisclosed liabilities of the Debtor are as follows:

    A. Commonwealth Edison - $2,538.09

    B. LVNV Funding - $653.15

    C. IL Dept. of Revenue - $10,954.61

    D. Peoples Gas - $1,134.73

    E. Internal Revenue Service - $163,480.48

    F. KJ Plumbing Servicing Inc. - $28,500.00

    G. Bradley and Anissa Rindfleisch - $66,751.00

57. In addition to the undisclosed creditors that have filed claims in this Case, the Debtor also has failed to disclose several other obligations totaling, which are as follows:

    A. A loan to Debtor dated October 2, 2019 from US Enterprises LLC F4 in the amount of $160,854 which is secured by a mortgage against the Rainbow Road Property, a copy of which is attached hereto as Exhibit T. Pursuant to the payoff letter issued by US Enterprises in response to the subpoena, there remains a balance due and owing on the loan, as of the January 2, 2021, in the

amount of $167,967.06 with a per diem accrual of interest of $80.43.  *See* Exhibit O, Page 51.

B.  The Kawa loans against the Ela Road Property, Erica Drive Property and Krause Lane Property, in the amounts of $114,000, $40,000, and $150,000, respectively, for which loans the Debtor is a guarantor.  *See* Exhibit E, Pages 8 – 34; Exhibit F, Pages 18 – 41; Exhibit G, Pages 17 – 33.

C.  A mechanics lien recorded on October 28, 2020, by Max Trucking, Inc. against the Prospect Avenue Property and Piotr Gawron dba PMG Contractors & Builders (the "Max Trucking Lien").  A copy of the Max Trucking Lien is attached hereto as Exhibit L; and

## C. OPERATING REPORTS

58. Courts have determined that monthly operating reports "are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it do something." *In re Berryhill,* 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991).  "[Operating Reports] are 'the life blood' of chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations. *Id.*  Failure to file them -- and file them timely -- is a serious breach of the debtor's fiduciary obligations and 'undermines the Chapter 11 process." *In re All Denominational New Church,* 268 B.R. 536, 538 (B.A.P. 8th Cir. 2001);  *See also In re Aurora Memory Care, LLC,* 589 B.R. 631, 639 (Bankr. N.D. Ill. 2018) (holding debtor's failure to file monthly operating reports constituted  "cause" under § 1112(b)).

59. To date, the Debtor has filed only two of the six monthly operating reports that have come due since the Petition Date, for the months of August 2021 and September 2021, both of which were filed on October 24, 2021, just three days prior to the hearing on the Debtor's Motion to Employ a Broker (the "Operating Reports").

60. Both of the Operating Reports, which were the Debtor attested to being filed under penalty of perjury, stated that the Debtor earned no income and made no disbursements during the two months after Petition Date.  *See* Docs 28 and 29.

61. In addition, the Operating Reports the tax questionnaire in both Operating Reports was wholly incomplete.  *Id.*

62. In Schedule I, the Debtor stated that he earned monthly income in the amount of $6,500.00 through his employment at "PMG Construction & Building."  *See* Doc. 18, Pages 16-17.

63. In Schedule J, the Debtor stated that he had monthly expenses in the amount of $8,525.00, which relative to the Debtor's income, results in a deficit of $2,025.00 per month. *Id*. at 18-20.

64. The Debtor to have no income or expenses in either month, in direct contravention to the income and expenses set forth in the Debtor's Schedules.

65. The Debtor's failure to file and failure to complete any portion of the two Operating Reports that were filed for August and September 2021 evidences the lack of serious intent the Debtor has in reorganizing and instead, proves the Debtor's intent in filing the Petition was to stay LincolnWay from enforcing its rights to Rainbow Road Property.

## II. THE DEBTOR LACKS ANY REASONABLE LIKELIHOOD OF REHABILITATION DUE TO THE DEBTOR'S LACK OF INCOME.

66. The Rainbow Road Property, which is the sole asset disclosed in the Debtor's schedules, is the subject of a Foreclosure Case, in which case the Sheriff's Sale was scheduled to occur on the eve of the filing of the Debtor's Petition.

67. The fair market value of the Rainbow Road Property, per the Debtor's schedules is $1,500,000. *See* Doc. 18, Schedule D. In August 2021, LincolnWay obtained a professional appraisal of the Rainbow Road Property, which reflected its value to be $1,250,000. A copy of the appraisal report is attached hereto and incorporated herein as Exhibit "U".

68. As of the date of entry of the Judgment of Foreclosure, the balance due to LincolnWay was $1,361,383.35 and interest accrues on the unpaid balance at a rate of approximately $10,070.40 per month. *See* Exhibit "B".

69. Since the Petition Date, the Debtor has not maintained insurance for the Rainbow Road Property and therefore, LincolnWay has had to force-place insurance and incur the cost of those premiums. A copy of the most recent bill, for the period commencing October 1, 2021 is attached hereto as Exhibit "V".

70. In addition, the Debtor has not paid the real estate taxes that became due after the Petition Date, for the second installment of the year 2020. The amount due for the unpaid installments of the years 2019 and 2020 is approximately $56,658.24.

71. The balance due on the mortgage to LincolnWay, together with the second mortgage to US Enterprises and the outstanding taxes total almost $1.7 million. Satisfaction of those obligations, together with the costs of sale, grossly exceed the value of the Property.

### III. THE DEBTOR'S POST-PETITION CONDUCT DEMONSTRATES BAD FAITH.

72. The Debtor's post-petition conduct indicates the Debtor's intention in filing this case is to take advance of the benefits of a chapter 11 bankruptcy without meeting its attendant obligations.

73. On September 28, 2021, the 2021 annual report for PMG 3 was filed with the Secretary of State of Illinois, which reflected the Debtor to be the part listed as the manager and any member having the authority of manager. A copy of the 2021 annual report of PMG 3 is attached hereto and incorporated herein as Exhibit "W".

74. On October 20, 2021, the Debtor filed a Motion to Employ a Real Estate Broker to sell the Rainbow Road Property.

75. On October 27, 2021, this Court granted the Debtor leave to employ a real estate broker to sell the Rainbow Road Property pursuant to the terms of the Amended Listing Agreement, which provided for a listing price of $1,875,000 and for possession to be surrendered at the time of closing (the "Listing Agreement"). *See* Document 31.

76. A listing of the Rainbow Road Property was activated in multiple listing service until November 24, 2021 (the "Listing"). A copy of Listing is attached hereto and incorporated herein as Exhibit "X."

77. Even though a Listing of the Rainbow Road Property was activated, the Listing did not comport to the terms of the Listing Agreement as the initial price was $1,750,000 and instead of providing possession at closing, the Listing stated possession would be tendered on July 5, 2022. *See* Exhibit X.

78. In addition to the Listing's failure to adhere to the terms approved by the Court, as of today's date, the Listing remains grossly incomplete in that it does not contain anything other than a graphic image of the Rainbow Road Property and contains minimal information describing the Rainbow Road Property. *See* Exhibit X.

79. Since the filing of the instant case, the Debtor has not paid the real estate taxes that became due and owing nor has the Debtor maintained insurance for the Rainbow Road Property. *See Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 161 (N.D. Ill. 2018) (affirming bankruptcy court's dismissal of chapter 11 on grounds that debtor had failed to pay post-petition real estate taxes).

80. In addition, on January 2, 2022, the Debtor was served with Subpoenas issued to 3rd Coast and PMG, which sought documents related to each entity, which were to be produced within fourteen (14) days of service of the subpoenas. As of the date of filing of this Motion,

the Debtor has not responded to either subpoena and has taken no action to quash either subpoena. Copies of the Affidavits of service of the subpoenas are attached hereto collectively as Exhibit "Y".

81. On January 27, 2022, this court sent notice to all parties, including the Debtor and the Debtor's attorney, that a status hearing would occur in this case on February 16, 2022 at 10:00 a.m. *See* Doc. 60. However, neither the Debtor nor Debtor's counsel appeared for the status hearing.

82. To date, the Debtor has yet to file a plan and failure to attend to any post-petition obligations associated with the Rainbow Road Property prove the Debtor's intention in filing the Petition was solely to create the automatic stay and evade the court order allowing LincolnWay to conduct a Sheriff's sale in the Foreclosure Case.

83. However, as the Debtor lacks income and the only disclosed asset is encumbered with liens that exceed its value, the only plan that the Debtor could propose is a liquidation plan. As the Debtor would not be entitled to a discharge in a liquidation plan, the Debtor's lack of income render proposal of a plan to be futile. *See In re Local Union 722 International Brotherhood of Teamsters*, 414 B.R. 443 (Bankr. N.D. Ill. 2009) (Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired. Likewise, they do not need to "incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated.")

84. In spite of the additional claims that have been filed in this case and the Motion of LincolnWay to issue subpoenas to prove Debtor's failure to accurately disclose his assets, the Debtor has taken no action to correct the errors and omissions in his filings. The fact that the Debtor has taken no action to correct these errors and omissions lends additional weight to the conclusion that the Debtor had no interest in making full and honest disclosure of his assets and liabilities.

85. In failing to propose a plan, failing to file Operating Reports and failing to earn any income while also failing to attend to the post-Petition obligations associated with the Rainbow Road Property, the Debtor is taking advantage of the benefits of a chapter 11 bankruptcy without meeting its attendant obligations. Thus, cause exists for dismissal

## IV.  <u>Conclusion</u>

86. The Debtor's disclosure of his assets, liabilities and other facts are material to the assessment of the Debtor's financial condition and ultimately, to proper administration of

this Case.  The Debtor's material misrepresentations, coupled with his willful disregard for his post-petition filing obligations and this Court's orders indicate the Debtor's intent to orders post-petition conduct demonstrates the Debtor's willful intent to ignore the filing obligations imposed upon him are clear indications that the Debtor filed this case in bad faith and for no other reason than to thwart LincolnWay's ability to proceed with the Foreclosure Case.

87. As cause has been established, the question then becomes whether conversion or dismissal is the appropriate remedy.  In deciding whether conversion or dismissal is appropriate, courts have considered what a number of factors but primarily have sought to determine whether a plan has been confirmed and what whether there are unencumbered assets available to the chapter 7 trustee for distribution to creditors.  *In re Helmers*, 361 B.R. 190, 197 (Bankr. D. Kan. 2007) (citing Alan N. Resnick and Henry J. Sommer (Co-Editors), 7 Collier on Bankruptcy, ¶ 1112.04[6] (15th ed. rev. 2005)).  The sole asset listed on the Debtor's schedules is the Rainbow Road Property, which is encumbered with liens that exceed its value.  The other three other real property interests that are owned by PMG 3 and the real property owned by 3rd Coast are each encumbered with mortgages.

88. To the extent that there are other assets owned by the Debtor or by any of the entities in which the Debtor has an interest, the existence and value of such assets is unknown. Additionally, there are other creditors, such as OnDeck Capital, that have made loans secured by the assets of that business.  Even if not as to the remaining assets disclosed on the Debtor's tax schedule, those assets appear to be tools and other construction equipment that are unlikely to have value in excess of the administrative costs associated with the discovery and liquidation of the same.  As courts have routinely disfavored conversion for the mere possibility of discovering other assets, conversion of this Case would not be appropriate. *See In re T.S.P. Indus., Inc.*, 120 B.R. 107, 111 (Bankr. N.D. Ill. 1990) (The mere possibility that a claim might be found is not reason enough to convert a case, appoint a trustee and incur administrative expenses that will almost certainly never be paid.  That result would not be in the best interests of creditors or the estate).  Thus, LincolnWay maintains that dismissal, and not conversion is the more appropriate remedy.

## V.  **The Court should bar the Debtor from refiling a bankruptcy case for one year.**

89. Section § 349(a) provides as follows:

> Unless the court, for cause, orders otherwise, the dismissal of a case

under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).

90. Section 349(a) grants the Court discretion to prevent a subsequent filling where a debtor's acted in bad faith during the initial bankruptcy. *See In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002) (the type of bad faith conduct demonstrating "cause" for dismissal can serve as the basis for dismissal with a bar to refiling a bankruptcy case under § 349(a).

91. As demonstrated herein, the Debtor's bad faith conduct and fraud on the Court and his creditors warrants dismissal with a bar on refiling. Therefore, in conjunction with dismissal of this Case, pursuant 11 U.S.C. § 349(a), LincolnWay requests that the Debtor be barred from filing a case under any chapter of the Bankruptcy Code for one year, or a minimum, 180 days.

## REQUEST FOR RELIEF FROM THE AUTOMATIC STAY

92. In the event this court does not deem dismissal of the instant case to be warranted, Movant requests and is entitled to relief from the automatic stay to complete the Sheriff's Sale of the Rainbow Road Property, pursuant to 11 U.S.C. §362(d), which permits a court to grant relief from the automatic stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest, or (2) with respect to a stay of an act against property under 11 U.S.C.S. § 362(a), if (A) the debtor does not have any equity in such property, and (B) such property is not necessary to an effective reorganization.

**I. Cause Exists to support modification of the stay.**

93. The first ground for obtaining relief from the automatic stay provides that the Court shall grant relief by terminating, annulling or conditioning such stay "for cause." 11 U.S.C. §362(d)(1).

94. Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." Milne v. Johnson (In re Milne), 185 B.R. 280, 283 (N.D. Ill. 1995).

95. As alleged herein, the Debtor's pre-and post-petition conduct relative to the failure to properly disclose his assets, or even his liabilities, evidences the Debtor's bad faith in filing the bankruptcy petition and intent to defraud his creditors.

96. Even more, the Debtor's willful failure to file (i) amended schedules to provide for all of his unsecured creditors, (ii) Operating Reports for the last four months, or (iii) a proposed plan indicates that the Debtor does not take his legal obligations relative to this Case seriously.

97. Courts have found where a bankruptcy case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, a case should be dismissed as having been filed in bad faith.  In re Casse, 198 F. 3d 327, 332 (2d Cir. 1999) ("The filing of a bankruptcy petition to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code."); In re Earl, 140 B.R. 728, 733 (Bankr. N.D. Ind. 1992).

98. After making an unsuccessful last-minute effort to obtain a stay of the Sheriff's Sale in the Foreclosure Case, the Debtor filed this Case on the eve of the Sheriff's Sale.

99. Continuation of the stay will continue to allow the Debtor to remain in possession of the Rainbow Road Property without the necessity of paying for any of the obligations of the Property, while causing significant injury to LincolnWay, the largest secured creditor in this Case.

100. Based on the foregoing, sufficient cause exists to support modification of the stay.

## II. THERE IS NO EQUITY IN THE RAINBOW ROAD PROPERTY AND IT IS NOT NECESSARY FOR REORGANIZATION.

101. The balance due to LincolnWay is almost $1.5 million and each month, over $10,000 in interest accrues thereon.

102. In addition to the balance due to LincolnWay, as of January 2, 2022, the balance due to US Enterprises LLC F4, was $167,967.06, with interest that accrues at $80.43 per day.  See

103. Even more, the Debtor failed to pay the 2019 and 2020 real estate taxes due for the Rainbow Road Property, and the amount due to redeem the taxes from the sale is approximately $56,658.24.

104. After factoring in standard costs of a sale including 5% commission due the listing realtor, even with a sale price of $1,850,000, there is no equity in the Rainbow Road Property.

105. As the Debtor's ability to reorganize is not dependent on retention of the Rainbow Road Property, modification of the stay would not result in harm to other creditors.

106. To deem a property necessary to an effective reorganization under section 362(d)(2) requires that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988).

107. In this Case, the Debtor has yet to even file a proposed plan. However, based upon the statements proffered by the Debtor in the Motion to Employ a Broker, the Debtor intends to liquidate the Rainbow Road Property, which sale the Debtor attests to being in the best interest of and for the benefit of his creditors. *See* Doc. 26.

108. Section 1129(a)(11) provides that a court shall only confirm a chapter 11 plan if it finds that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11).

109. Even more, courts have determined that a plan which delays payment only upon the sale of the property, without more definite terms, is illusory and fails to satisfy the feasibility requirement of § 1129(a)(11). *See In re Harman*, 141 B.R. 878, 880 (Bankr. E.D. Pa. 1992) (finding that "plan provision which triggers payments only upon the Debtors' sale of a certain property is illusory an must be phrased in mandatory terms to be meaningful."); In re Walker, 165 B.R. 994, 1005 (E.D. Va. 1994) ("Without knowing the terms of the proposed sales . . . and without knowing the specific timeframe for the proposed sale . . . it is impossible for a court to find" that plan is feasible); *In re ARN LTD. Ltd. P'ship*, 140 B.R. 5, 14 (Bankr. D.D.C. 1992) (refusing to confirm plan conditioned upon closing of sale that had no deadline to close).

110. The Debtor's failure to list the Rainbow Road Property for sale with sufficient information is unlikely to attract potential buyers. Further, the fact that the Listing states that a buyer would be obligated to delay the closing or to assume possession subject to the Debtor's occupancy of the Property until July 2022 seems to be an attempt to deter buyers from even considering the Property. *See* Exhibit X.

111. The Debtor has had several months to attempt to sell the Rainbow Road Property. During that time, the Debtor's actions have actually frustrated the ability to sell and thus, indicated that that the Debtor doesn't actually intend to effectuate a sale of the Rainbow Road Property. The actions of the Debtor, coupled with the Debtor's inaction in satisfying the post-petition tax and insurance obligations for the property indicate that the Debtor intended to

do nothing more than remain in possession of the Rainbow Road Property indefinitely and at the expense of LincolnWay and the other creditors with liens against the Property.

112. In this case, any proposed plan that would seek liquidation of the Rainbow Road Property would fail to comply with §§ 1123(a)(5) and 1129(a)(11), as the plan would not become effective until the sale occurs and based on the Debtor's conduct in Listing the Rainbow Road Property, the Debtor has actual intention of completing the sale but instead, intends to delay the sale process for as long as possible.

113. Furthermore, any plan that would propose an open-ended sale would serve to impermissibly place the risk of loss and any decline in value of the Rainbow Road Property on the creditors, particularly LincolnWay as the largest secured creditor, without any compensation whatsoever. *See In re Park Place Assocs.,* 115 B.R. 940, 947 (Bankr. N.D. Ill. 1989).

114. As the proceeds of the sale of the Rainbow Road Property would be insufficient to satisfy the liens of LincolnWay, US Enterprises and the outstanding real estate taxes, there would be no funds available for distribution to other creditors. *See* Exhibit B; Exhibit O, Page 51.

115. 11 U.S.C. § 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation" and as the Debtor in this Case has demonstrated a lack of income to contribute towards payment to other creditors, the Debtor lacks the ability to propose a feasible plan.

116. As the Debtor lacks the ability to successfully reorganize, with or without the Rainbow Road Property, continuation of the automatic stay serves no purpose but to cause additional injury to LincolnWay.

117. The filing of the current case, without a reasonable likelihood of being able to propose a confirmable plan, implies that the filing of the current case is part of a scheme to delay, hinder and delay the Sheriff's Sale and defraud LincolnWay and the other creditors of the Debtor.

118. No cause exists to delay the enforcement and implementation of relief and if not permitted to continue to foreclose its security interest in the Rainbow Road Property, LincolnWay will suffer irreparable injury, loss and damage in addition to incurring additional fees and costs in the pending foreclosure action; therefore, Movant requests any stay of enforcement pursuant to Bankruptcy Rule 4001(a)(3) be waived.

## <u>RESERVATION OF RIGHTS</u>

119. To the extent that this Court does not impose sanctions sua sponte in accordance with Fed. Bankr. Rule 9011 (c)(1)(B), LincolnWay seeks leave to file a Motion for Sanctions pursuant to Rule 9011 and 11 U.S.C. § 105.


WHEREFORE, Movant requests that this Court enter an order:

1. Dismissing Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1122(b);

2. Or alternatively, converting this case to a Chapter 7 11 U.S.C. § 1122(b) and granting Movant relief from the automatic stay in effect under 11 U.S.C. §362(a) to permit it to complete its foreclosure and enforce its lien;

3. Providing that an order for stay relief shall not be stayed until the expiration of 14 days as otherwise required by Federal Rule of Bankruptcy Procedure 4001 (a)(3);

4. Granting Movant the right to pursue Sanctions against the Debtor for his bad faith conduct; and

5. Providing for such other and further relief as is just in the circumstances.


Respectfully Submitted,

LincolnWay Community Bank


<u>/s/ Sandra L. Makowka</u>
One of Its Attorneys


Cohen Dovitz Makowka, LLC
Sandra L. Makowka
Attorney No. 6286780
10729 W. 159TH Street
Orland Park, IL 60467
(708) 460-7711
Email: BANKRUPTCY@CDM.LEGAL